No. 1893.—KEMBER & GEORGE v. SOUTHERN EXPRESS COMPANY.

The Southern Express Company, by taking a package of gold to transport from New Orleans to Mobile with full knowledge of its character and contents, became liable for the amount which the package contained, that was lost or miscarried by the company, even though the receipt, given by the company at the time, showed that it was an ordinary package, valued at fifty dollars. The company on being made acquainted with the contents of the package by the agent for the owner, should have given a receipt for the full amount, and not attempted to limit their liability to fifty dollars.

The receipt, given by an express company for the shipment of a package, which contains the clause, that, in case of loss, the company will not be responsible for anything above the amount stated in the receipt to be its value, is not absolutely conclusive against the shipper, and he may show by evidence, in case of loss, that the package contained gold coin, and recover the amount notwithstanding the receipt.

APPEAL from Fourth District Court of New Orleans. *Théard*, J. *C. M. Conrad & Son*, for plaintiffs and appellees. *H. J. Leovy* and *E. C. Billings*, for defendants and appellants.

TALIAFERRO, J. The plaintiffs sue the defendants for seven thousand dollars damages, sustained by them, as they allege, from the loss of four thousand dollars in gold coin delivered by their agent in New Orleans to the defendants, under contract with them, to be delivered to the plaintiffs in Mobile, but that defendants have failed to deliver the same, and are thereby liable for and bound to plaintiffs for seven thousand dollars and interest at five per cent. per annum from the first of March, 1866.

The answer is a general denial. The defendants specially deny that plaintiffs are the owners of any package shipped through the defendants by George Coppell, for Mobile, in 1866, or at any other time. They deny that Coppell, either for himself or other parties, shipped any package by defendants stated by him to contain gold or any other article of value, or on which he paid compensation for gold or other valuable commodity, or on which he made any contract for a value exceeding fifty dollars.

The plaintiffs had judgment in their favor for $5600, with legal interest from judicial demand. The defendants have appealed.

Kember & George v. Southern Express Company.

We do not deem important in the decision of the case to pass on the several bills of exceptions embodied in the record.

The facts seem to be, that early in January, 1866, the plaintiffs being in Mobile, instructed their agent, Coppell, then in New Orleans, to purchase for them four thousand dollars in gold, and to forward the money to them by some safe private conveyance, if an opportunity presented; if not, to send it by express. The agent accordingly obtained the gold, and decided to send it by the Southern Express Company.

As it is important to ascertain the circumstances under which the intended transmission occurred, we shall notice at some length the evidence in the record.

Coppell, the agent, says: " The gold was packed in oil canvas, and then enveloped in stiff brown paper, tied with either string or tape, and sealed with sealing wax, with the impression G. C. upon the wax; the wax was applied in three or more separate places. I applied with mucilage a small piece of white writing paper to the package, and wrote on this paper, 'Messrs. Kember & George, Mobile.' I stamped upon the paper, ' George Coppell, New Orleans.' I took this package to the Southern Express Company's office, corner of Gravier and Carondelet streets, New Orleans, where I saw a young man receiving parcels. I placed the package containing the gold upon the counter, with my left hand upon it, and said to the young man: ' This is gold.' He asked me who was sending it, and I told him ' I was,' giving my name, as I told him, in answer to his question. He made an entry in a book. The name of the young man was Dayton or Drayton." * * *
" When I handed the package to Dayton or Drayton, he took it and put it by itself upon a shelf in the rear of the counter, where there was no other package or articles. As soon as I learned from plaintiffs that the gold had not been received, I lodged information of the matter with the police authorities, who thereupon had three of the employes of the company arrested, but nothing was elicited, and the gold was not secured." During the time these parties were under arrest, the witness states that "the book in which the entry of the package had been made was sent for, and that Dayton or Drayton acknowledged the entry to be in his handwriting." The entry was of a package from " George Coppell to Kember & George, Mobile."

In reply to a cross interrogatory, the witness said: "I made no agreement with regard to the amount to be paid for the transportation of the package, except that the charges for carrying the same were to be paid by the plaintiffs in Mobile, which the clerk acquiesced in. I did not insure the package, and I paid no premium to the defendants. There was no special contract made by me with the company based on the value of the package."

The way bill of the express company for February 1, 1866, has an entry in it: "Coppell—Kember & George, Mobile; freight 50."

Buckley, a witness for defendants, says: "I was way bill clerk for the Southern Express Company in February and March, 1866. The way bill marked N. N. (the one in evidence) is entirely in my hand-writing. It was made on the first of February, 1866. When we receive ordinary packages we place them in a large packing chest, and they are sent out in charge of a messenger. I checked the package to Kember & George on the way bill. The check mark was made by me as called out to me to go into the chest with other packages on the way bill. 'Calling off' means that as another clerk would call off each package separately by the maks, and put it in the chest, I would check it off. The same thing was done in relation to this package as was done with all packages. I did not see the package being put into the chest. I would not have seen one of the clerks had he put the package in his pocket. Between the second and fifth of February, 1866, Mr. Coppell came into the office, and said the lost package contained $4000 in gold.  *   *   *  He exhibited the receipt, and I called his attention to the fact that the receipt was for a package valued under fifty dollars, and asked him if he had not called the attention of Mr. Drayton to the fact that it contained gold. Coppell said he did so at the time of shipping it, but that he did not think the clerk heard him, as his (the clerk's) attention was attracted to another clerk on his left, with whom he was speaking at the time."

The defendants rely mainly on their liability being limited, and that consignors are made aware of the conditions upon which they under-take to transport goods, by written or printed receipts, signed by them and delivered to their customers. These receipts they hold to be evidence of the contracts they make with shippers or consignors, and that the latter are bound by them. One clause in the receipt is, "if the value of the property is not stated by the shipper at the time of shipment, and specified in the receipt, the holder thereof will not demand of the company a sum exceeding fifty dollars for the loss or detention of, or damage to each package receipted for." A receipt of this character, it appears, was taken by Coppell. He swears, however, that he was not apprised of the fact that it contained the clause of limitation until after the miscarriage or loss of the gold was ascertained. On this subject, he says: "A receipt was given to me for the package; the value of the package was not fixed in the receipt; I think, but am not certain, that the blank in the printed form was left unfilled. I saw that the receipt had in it a clause limiting the respon-sibility of the company to fifty dollars afterward, when the trouble arose, but I did not observe, and was not aware of any such limitation when I took the receipt." This instrument was not produced on the trial. On cross examination he stated that the receipt had been sent to Kember & George, at Mobile, and that the form annexed to the cross interrogatory "looked like the form of the receipt taken by me,

but I can not positively state; the space after the words *valued at* was not filled in my receipt. I did not object to the receipt at the time it was given to me, nor at any subsequent time previous to the discovery of the loss."

We think it clearly established that the company received the package of gold with full knowledge of its contents. The statement by one of the defendants' witnesses that Coppell told him, after the loss of the package, that when he delivered it for transmission, and informed the clerk of its contents, the latter did not hear him, being at the time engaged in conversation wit' another clerk, appears to be intrinsically entitled to little weight. It seems improbable that a man of ordinary prudence and business capacity would deposit in the office of an express company a package containing four thousand dollars in gold, tell a clerk who did not hear him that it contained gold, and use no further effort to make himself understood as to what the commodity was that he desired to transmit. Certainly such evidence can not avail the company against the clear, distinct and positive statement of the agent, that the clerk to whom he delivered the package inquired, upon being informed of its contents, in whose name it was to be shipped, made an entry in a book, received the package, and laid it away on a shelf in the rear of the counter, separately and apart to itself, there being upon the shelf no other package or other articles.

In addition to this, the careful manner in which the package was made up and secured by fastenings, sealed with wax, having impressed upon it the initials of the consignor, and upon a white slip of paper attached, the names and residence of the consignees, and also the great weight of a package of so small a bulk, were all indications which could not be disregarded that its contents were of greater value than ordinary small packages of goods. No attempt is made by the defendants to account for the loss of the gold which they received for transportation. They rely upon the receipt, which does not show that the package was received as being of greater value than would, in the event of its loss, render the company liable for more than fifty dollars.

Under the circumstances, and the state of facts presented in this case, we think the plaintiffs should recover. They fulfilled the most important condition set forth in the receipt, that of making known the value of the thing to be shipped. This act necessarily preceded the making out and delivery of the receipt. Knowing the value of the package received for transmission, good faith and fair dealing required that the defendants should have specified its value in their receipt which they delivered to the plaintiff's agent, who received it from the company's clerk. The latter had every reason to believe that the former took it as an acknowledgment of the possession of the gold, and an agreement to carry it to Mobile. The facts more strongly warrant this conclusion than, as intimated in argument, that the agent was acting disingen-

uously by aiming to get the transportation for a very trifling sum, thinking, at the same time, the company would be responsible if the gold were lost.

For these reasons we think the decision of the lower court ought to be adhered to.

It is therefore ordered, adjudged and ·decreed that the judgment of the district court be affirmed, with costs in both courts.

Rehearing refused.